IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HOUSE OF BRYANT PUBLICATIONS, LLC | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF LAKE CITY, TENNESSEE; | ) | No. 3:14-cv-93 |
| ROCKY TOP TENNESSEE MARKETING | ) | (VARLAN/GUYTON) |
| AND MANUFACTURING CO.; TIM ISBEL; | ) | |
| BRAD CORIELL; MARK SMITH; | ) | |
| MICHAEL LOVELY; and | ) | |
| CARL "BUDDY" WARREN, | ) | |
| | ) | |
|     Defendants. | ) | |

## DEFENDANT CITY OF LAKE CITY'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Defendant City of Lake City (hereinafter "the City" or "Lake City") hereby appears, by and through counsel, and files this Response to Plaintiff's Motion for a Preliminary Injunction and states as follows:

## INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff, House of Bryant Publications, LLC filed their unverified Complaint in this matter on or about March 7, 2014 in the United States District Court for the Eastern District of Tennessee. (See Doc 1). The Complaint names the City of Lake City, Tennessee, Rock Top Tennessee Marketing and Manufacturing, Co., Tim Isbell, Brad Coriell, Mark Smith, Michael Lovely, and Carl "Buddy" Warren as Defendants. (See Doc. 1: Compl., p. 1).

Contemporaneously with the Complaint, the Plaintiff also filed a Motion for a Preliminary Injunction (Doc. 03) and a Memorandum in Support of Motion for Preliminary Injunction (Doc. 3-1). In said Motion, the Plaintiff claims it is seeking a preliminary injunction, "prohibiting Lake City from changing its name and prohibiting the other defendants from

continuing efforts in support of the name change." (Doc. 3-1: Memorandum in Support of Motion, p. vi).

Pursuant to this Court's Order (Doc. 9), this Court has ordered an evidentiary hearing take place regarding whether a preliminary injunction should be issued in this case. The City submits that the Motion for a Preliminary Injunction should be denied for the reasons set out below.

## FACTS APPLICABLE TO THE PRESENT MOTION

The City of Lake City (hereinafter "the City" or "Lake City") does not deny that it has begun the process of changing its name from Lake City to Rocky Top. As set out in Plaintiff's Complaint, Lake City is pursuing the name change based on a proposal from the Developers to build a theme park in Lake City. (Doc. 1: Compl., ¶ 51). The theme park is essential to development within the City, because of "Lake City's relative lack of industry, manufacturing, tourism, or any other employment base or economic driver." (Doc. 1: Compl, ¶ 49). The proposed job growth is what is fueling the name change for Lake City.

Plaintiff's Complaint alleges that a development group called Rocky Top Tennessee Marketing and Manufacturing Co. and its principals (hereafter "the Developers"), promised the residents and officials of Lake City that they would build a $20 million theme park in Lake City, on the condition that Lake City change its name to Rocky Top. (Doc. 1: Compl., ¶ 51). However, Lake City has not invested in the development group, Lake City is not a sponsor of the development group and Lake City is not a Developer with the development group. Lake City and Rocky Top Marketing and Manufacturing Co. are two distinct and separate entities.

Thus, as it relates to the City, any allegations related to the Developers and the development group are irrelevant to the claims against Lake City and unrelated to the allegations

brought against Lake City. Consistent with the allegations contained in the Complaint, Lake City is not building a theme park, the Developers are. Lake City is not constructing a "Rocky Top candy company," the Developers are. Lake City is not constructing restaurants, movie theaters and hotels, the Developers are. Lake City does not intend to sell various merchandising including food products and packaging, clothing, toys, books and other knickknack, the Developers are. Thus, Lake City does not intend to introduce any products into commerce that infringe on any of the Plaintiff's trademarks.

Regarding the alleged name change, as set out in Plaintiff's Complaint, "[t]he remaining steps for the Lake City name change to take effect include the Tennessee General Assembly approving the name change and the city council of Lake City ratifying the change." (Doc. 1: Compl., ¶ 43). Since the filing of Plaintiff's Complaint, the name change has been approved by both the House and Senate; however, the bill authorizing the name change still must be signed by the Governor. Without the Governor's signature, the Lake City City Council cannot vote to make the name change official. There are many hurdles Lake City must overcome before it can legally change its name, and many of the hurdles, including the required action by the Tennessee Governor, are completely outside of the City's control. Unless and until the name change is approved by both the Governor and the City Council, Plaintiff's alleged damages are uncertain and speculative.

Although Plaintiff alleges that Boudleaux and Felice Bryant were not referring to any known city as Rocky Top when they wrote the song "Rocky Top" (Doc. 1: Compl., ¶ 37), there actually is a place known to many in this area as Rocky Top: Rocky Top is a popular hiking destination located in the Cades Cove portion of the Great Smoky Mountains National Park. Attached hereto as Exh. 1 is a printout from the National Park Service discussing the Rocky Top

3

trail. Exhibit 1: National Park Service, Cades Cove, http://www.nps.gov/grsm/planyourvisit/cadescove.htm (last visited April 9, 2014). As explained by the National Park Service, "[l]onger hikes to Thunderhead Mountain and Rocky Top (*made famous by the popular song*) also begin in the cove." (Exhibit 1 (emphasis added)).

Plaintiff's use of the phrase "Rocky Top" on its miscellaneous goods is not distinctive or unique, because there are hundreds of other businesses in this state that also use the phrase Rocky Top. Any confusion in the market place will be minimal given the number of businesses in this state that also use the name "Rocky Top." As set out in the attached listing provided by the Tennessee Secretary of State, there are at least 264 registered entities in Tennessee that also use the name "Rocky Top." (Business Information Search from Tennessee Secretary of State website, attached hereto as Exh. 2). It is hardly likely that the addition of another entity with the name "Rocky Top" will cause any consumer confusion.

## LAW AND ARGUMENT

## STANDARD OF REVIEW

The standard for granting a preliminary injunction is set forth in <u>Nightclubs, Inc. v. Paducah</u>, 202 F.3d. 884 (6th Cir. 2000):

> In deciding whether to grant a preliminary injunction, a district court must consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.

<u>Nightclubs, Inc. v. Paducah</u>, 202 F.3d 884, 888 (6th Cir. 2000).

Additionally, "[i]njunctions are 'drastic and extraordinary' orders which 'should not to be granted as a matter of course,' <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139 (2010)." <u>Brown v. City of Upper Arlington</u>, 637 F.3d 668 (6th Cir. 2011). The party seeking a

4

preliminary injunction must "demonstrate a clear entitlement to the injunction under the given circumstances." Entertainment Productions, Inc. v. Shelby County, 545 F.Supp.2d 734, 740 (W.D.Tenn.2008). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir.2000).

- **A. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED, BECAUSE THE PLAINTIFF HAS NOT COMPLIED WITH FED. R. CIV. PRO. 65(c).**

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, this Court may issue a preliminary injunction "…only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Plaintiff has failed to give security and/or pay a bond in an amount that will pay the costs and damages that will be sustained by the City for being wrongfully enjoined. Thus, Plaintiff's Motion for a preliminary injunction must be dismissed for failure to comply with Fed. R. Civ. Pro. 65(c).

- **B. ALTERNATIVELY, PLAINTIFF'S MOTION SHOULD BE DENIED, BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION TO DECIDE THIS CASE.**

At the outset, this Court should deny Plaintiff's Motion for a Preliminary Injunction and dismiss this case, because the Court lacks subject matter jurisdiction. "The issue of standing, and whether a federal court has the power to adjudicate a suit, is 'the threshold question in every federal case.' " Planned Parenthood Ass'n v. City of Cincinnati, 822 F.2d 1390, 1394 (6th Cir.1987) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Jurisdictional challenges based on standing, ripeness, and mootness are reviewed *de novo*. See Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 278 (6th Cir.2009) (standing); In re

5

Cassim, 594 F.3d 432, 437 (6th Cir.2010) (ripeness); Demis v. Sniezek, 558 F.3d 508, 512 (6th Cir.2009) (mootness).

Miller v. City of Cincinnati, 622 F.3d 524, 531 (6th Cir. 2010). Pursuant to the doctrines of standing and ripeness, this Court does not have subject matter jurisdiction to decide the issues presently before the Court.

### 1. Standing

As to standing, a plaintiff has constitutional standing if he: (1) shows a concrete and actual or imminent injury in fact; (2) demonstrates that the defendant's conduct caused the injury; and (3) shows that it is likely, as opposed to merely speculative, that a favorable decision will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, (1992). Additionally, courts have recognized three prudential limitations on standing, requiring that "plaintiff be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd., 172 F.3d 397, 403 (6th Cir.1999) (quoting Pestrak v. Ohio Elections Comm'n, 926 F.2d 573, 576 (6th Cir.1991)); see also Coyne v. American Tobacco Co., 183 F.3d 488, 494 (6th Cir.1999) (prudential standing requirements summarized).

In this case, the Plaintiff has not sustained any injuries due to Lake City's efforts to change its name to Rocky Top, because the formal process for the name change has not been completed. Thus, as of today's date, Lake City's name remains Lake City, and the Plaintiff has not suffered any injuries. Moreover, even assuming the name change does occur, which remains uncertain, it is likely the name change would actually increase the recognition for the Rocky Top name, thereby increasing the value and worth of Plaintiff's trademark. However, at this stage of the litigation it is evident the Plaintiff has not shown a concrete injury in fact.

## 2. Ripeness

This Court must also deny Plaintiff's Motion for a Preliminary Injunction because Plaintiff's claims are not ripe for review. As set out in Plaintiff's Complaint, "[t]he remaining steps for the Lake City name change to take effect include the Tennessee General Assembly approving the name change and the city council of Lake City ratifying the change.[1]" (Doc. 1: Compl., ¶ 43). Clearly, there are many hurdles Lake City must overcome before it can legally change its name, and many of the hurdles, including the required action by the Governor, are entirely out of the City's control. It is far from certain, at least at this stage of the proceedings, that Lake City will go forward with the name change.

The ripeness doctrine prevents courts from "entangling themselves in abstract disagreements" through premature adjudication. Grace Community Church v. Lenox Twp., 544 F.3d 609, 615 (6th Cir.2008). "The ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." Brown v. Ferro Corp., 763 F.2d 798, 801 (6th Cir.1985). Courts consider three factors to evaluate ripeness: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.' " Berry v. Schmitt, 688 F.3d 290, 298 (6th Cir.2012) (quoting Grace Community Church v. Lenox Twp., 544 F.3d 609, 615 (6th Cir.2008)).

---

[1] Upon information and belief, the name change has now been approved by both the House and the Senate, and the bill is now awaiting signature by the Governor.

As the first factor suggests, "[r]ipeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." Nat'l Rifle Ass'n of America v. Magaw, 132 F.3d 272, 284 (6th Cir.1997). Thus, "[i]n undertaking a ripeness analysis," a court must "pay particular attention to the likelihood that the harm alleged by plaintiffs will ever come to pass." United Steelworkers of America, Local 2116 v. Cyclops Corp., 860 F.2d 189, 194 (6th Cir.1988). Although "[o]ne does not have to await consummation of threatened injury to obtain preventive relief," Blum v. Yaretsky, 457 U.S. 991, 1000 (1982), and there is no requirement of "inevitability," the Sixth Circuit "has held that a claim is ripe when it is 'highly probable' that the alleged harm or injury will occur." Casden, 306 Fed. Appx. at 972. That likelihood is far from evident here where the proposed name change for Lake City is dependent on approval from both the Tennessee Senate and Tennessee House of Representatives and dependent on a majority vote by the Lake City City Council. Both of these contingencies are entirely within the discretion of the Tennessee General Assembly and the Lake City City Council; thus, it is far from certain that the proposed name change will come to fruition.

Additionally, there has been no showing of any hardship in not allowing the proposed name change to go forward at this time, in order for both the Tennessee General Assembly and Lake City City Council to openly discuss, debate and ultimately vote on the name change. If, in fact, said name does survive passage by the Tennessee General Assembly and a majority vote by the Lake City City Council, and eventually causes harm to the Plaintiff, that is something which can be addressed at that time. Presently, however, Plaintiff's claims are not ripe for review. Accordingly, Plaintiff's Motion for a Preliminary Injunction should be denied.

## C. ALTERNATIVELY, PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED, BECAUSE NONE OF THE FACTORS APPLICABLE TO GRANTING A PRELIMINARY INJUCTION WEIGH IN PLAINTIFF'S FAVOR.

In the event the Plaintiff's Motion for a Preliminary Injunction is not denied for the procedural and jurisdictional reasons discussed above, this Court still must deny Plaintiff's Motion for a Preliminary Injunction because none of the factors applicable to this Court's analysis weigh in Plaintiff's favor. As stated previously, the standard for granting a preliminary injunction is set forth in Nightclubs, Inc. v. Paducah, 202 F.3d. 884 (6th Cir. 2000):

> In deciding whether to grant a preliminary injunction, a district court must consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.

Nightclubs, Inc. v. Paducah, 202 F.3d 884, 888 (6th Cir. 2000). None of these factors weigh in Plaintiff's favor, and accordingly, Plaintiff's Motion for a Preliminary Injunction should be denied.

### 1. There is not a substantial likelihood or probability of success on the merits

#### a) The Lanham Act Does not Apply to Plaintiff's Claims Against Lake City

Counts I through VIII of Plaintiff's Complaint are all purportedly brought pursuant to the Lanham Act, which can be found at 15 U.S.C. § 1051 et seq. Specially, the Plaintiff has brought claims pursuant to: Section 32 of the Lanham Act (15 U.S.C. § 1114) for likelihood of confusion (Count I); Section 43 of the Lanham Act (15 U.S.C. § 1125) for false designation or false or misleading description (Count II), unfair competition (Count III), passing off (Count IV), false advertising (Count V), dilution (Counts VI and VIII); and Section 35 of the Lanham Act (15 U.S.C. § 1117) for willful and/or exceptional conduct (Count IX). The Plaintiff is unlikely to

9

Case 3:14-cv-00093-TAV-HBG Document 19 Filed 04/09/14 Page 9 of 17 PageID #: 414

succeed on any of its Lanham Act claims, because by its plain and unambiguous language, Section 32 of the Lanham Act (15 U.S.C. § 1114) only creates liability for any person's use of a registered mark, without the consent of the registrant, "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Similarly, Section 43(a) prohibits any person from using "in connection with any goods or services ... any word, term, name, symbol, or device, or any combination thereof" that is likely to cause confusion or mistake as to the origin of the goods or services. Id. § 1125(a). Finally, Section 35 of the Lanham Act only applies to, "the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services." Id. § 1117(c). In fact, Plaintiff even notes that the trademark laws only apply to business engaged in commerce on page iv of its Memorandum, "[t]he trademark laws were written to protect people and businesses engaged in commerce against deceptive and misleading use of the words and names adopted to identify their goods." (Doc. 3-1, p. 7 (citing Fed.-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405, 409 (6th Cir. 1963)).

By requiring that infringement occur in connection with (the sale of) any goods or services, infringement claims brought under each of these sections are subject to a commercial use requirement. See Bosley Med. Inst. v. Kremer, 403 F.3d 672, 676 (9th Cir.2005) (commercial use requirement applies to § 32 claims); Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research, 527 F.3d 1045, 1051–53 (10th Cir.2008) (commercial use requirement also applies to § 43(a) claims). Thus, a use that does not meet this requirement, i.e., a noncommercial use, cannot create liability under sections 32 and 43(a) of the Lanham Act. See Bosley, 403 F.3d at 676; see also Utah Lighthouse Ministry, 527 F.3d at 1054 ("Unless there is a competing good or service

10

labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked.").

Based on the pleadings filed thus far in this case, Lake City has not indicated that it intends to sell any goods or services, and likewise Lake City has not indicated that it intends to sell any goods or services that compete with Plaintiff's trademarked goods. Lake City will not be operating a theme park and Lake City will not be selling any goods or services at said theme park. As set out in Plaintiff's Complaint, the "Developers" and their company, Rocky Top Tennessee Marketing and Manufacturing Co.,[2] "have promised the residents and officials of Lake City that they would build a $20 million theme park in Lake City." (Doc. 1: Compl., ¶ 51). The Complaint goes on to allege that "[m]any aspects of the proposed development will seek to trade on the fame, good will, and name of the Copyrighted Song and the ROCKY TOP marks…one known example is the proposed candy company, which will feature candy corn prominently, according to the Business Plan." (Doc. 1: Compl., ¶¶ 57-58). Again, the development referenced in the Complaint is a project that will be owned by the Developers and their company, not the City of Lake City. The City of Lake City has no involvement with the Development. All the City of Lake City has indicated it intends to do is formally change its name from Lake City to Rocky Top. It is evident that there can be no liability for Lake City under the Lanham Act, because Lake City is not using Plaintiff's trademark "in connection with the _sale, offering for sale, distribution, or advertising of any goods or services_ on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Thus, this factor weighs against the issuance of a preliminary injunction.

---

[2] Interestingly, the Plaintiff has apparently not sued Rocky Top Marketing and Manufacturing Co. for trademark and copyright infringement as it relates to the name "Rocky Top Marketing and Manufacturing Co." This is presumably because there are numerous businesses throughout the State of Tennessee that have similarly incorporated the phrase "Rocky Top," into their company names. See Exhibit 2.

## b) Even if the Lanham Act Does Apply to the Allegations Against Lake City, the Plaintiff is Not Likely to Succeed on its Claims.

Even assuming this Court determines that Lake City's name change is subject to the Lanham Act, the Plaintiff is still unlikely to succeed on the merits of its claims. As set out by the Plaintiff in its Memorandum in Support of Motion for a Preliminary Injunction, this Court should assess the likelihood-of-confusion factors for the trademark causes of action. The United States Court of Appeals for the Sixth Circuit has identified eight elements which are relevant in evaluating the likelihood of confusion in a trademark infringement case: (1) strength of the mark; (2) similarity of the marks; (3) relatedness of the goods or services; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting its mark; and (8) the likelihood of expansion of the product lines. Autozone, Inc. v. Tandy Corp., 373 F3d 786 (6th Cir. 2004); Hensley Manufacturing, Inc. v. Propride, Inc., 579 F3d 603, 610 (6th Cir. 2009).

The strength of a mark is a factual determination of the mark's distinctiveness. Autozone, Inc. v. Tandy Corp., 373 F.3d 786 (6th Cir. 2004). The "strength" of a mark ranges from (1) generic (a term used to commonly describe the relevant type of goods) and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful. Champions Golf Club v. The Champions Golf Club, Inc., 78 F.3d 1111 (6th Cir. 1998). There is nothing suggestive, arbitrary or fanciful about the term "Rocky Top." "Rocky Top" is a generic, geographic term that describes a hiking trail in the Cades Cove portion of the Great Smoky Mountains National Park and is not entitled to trademark protection. (See Exhibit 1). At best, "Rocky Top" is a descriptive term which can acquire protection only on a showing of secondary meaning; Plaintiffs have made no showing of secondary meaning. Defendants respectfully request that Plaintiff's request for injunctive relief be denied as there is no indication Plaintiff will succeed on its trademark infringement claim.

12

Defendants further submit that the descriptive nature of the term "Rocky Top" precludes success on the merits of the trademark claim.

Furthermore, none of the other factors relevant to the likelihood of confusion analysis weigh in Plaintiff's favor. The goods trademarked by Plaintiff are completely unrelated to the goods offered by Lake City, because Lake City is not offering any goods for sale. The marks are not similar, because Plaintiff's trademarked goods include miscellaneous items, such as hats, magnets, mugs, glasses etc., while Lake City's only use for the name "Rocky Top," is for the name of a governmental entity. No other use has been alleged by Plaintiff, as it relates to Defendant Lake City. Similarly the record is devoid of any allegations that Lake City intends to expand its "product lines," to include any of Plaintiff's trademarked goods. As for Defendant Lake City, it begins and ends with the name change.

In sum, it is unlikely any confusion will result should Lake City proceed with the name change. Lake City is not a company that will be entering into business to compete with Plaintiff and its trademarks. Lake City does not sell magnets, mugs, t-shirts, etc., so no actions on the part of Defendant Lake City will dilute Plaintiff's trademarks or lead to consumer confusion. Thus, Plaintiff is unlikely to succeed on the merits of its Lanham Act claims.

      c) <u>Plaintiff is not likely to succeed on its copyright claim, because the title of a Song is Not Subject to Copyright Protection.</u>

It is black letter law that the titles of copyrighted works are not subject to copyright protection. <u>Duff v. The Kansas City Star Co</u>., 299 F.2d 320 (8th Cir.1962). As recognized in Circular 36, a publication of the United States Copyright Office, "[c]opyright law does not protect names, titles, or short phrases or expressions. Even if a name, title, or short phrase is novel or distinctive or lends itself to a play on words, it cannot be protected by copyright." (U.S. Copyright

13

Office, Circular 36, attached hereto as Exh. 3, p. 1). Thus, the song title "Rocky Top," is not subject to copyright protection.

However, at least one court has stated that if a title is "arbitrary, fictitious, fanciful, artificial, or technical," it may achieve protection. <u>Johnston v. Twentieth Century–Fox Film Corp.</u>, 82 Cal.App.2d 796, 187 P.2d 474 (1947). Such reasoning may explain the suggestion in <u>Life Music, Inc. v. Wonderland Music Co.</u>, 241 F.Supp. 653 (S.D.N.Y.1965) that a single word from a song, such as "supercalifragilisticexpialidocious," which is also the song's title, might receive copyright protection. <u>Id</u>. at 656.

In the instant case, the song title "Rocky Top" is neither technical, nor is it as capriciously fanciful as "supercalifragilisticexpialidocious." The phrase "Rocky Top" is a geographic name for a summit at the top of Thunderhead Mountain in the Cades Cove portion of the Great Smoky Mountains National Forest. A song title based on a popular hiking destination certainly cannot be considered "fanciful or technical" so as to warrant copyright protection. Thus, for purposes of granting injunctive relief, the Plaintiff fails to establish a substantial likelihood of success on this issue, and thus on its copyright infringement claim.

**2. There is not a threat of irreparable harm to the Plaintiff.**

There is not a threat of irreparable harm to the Plaintiff if a preliminary injunction is not granted. First, the Plaintiff is seeking actual, statutory, and punitive damages should they prevail in their claims against the Defendants. This should be more than sufficient to adequately compensate Plaintiff for any injuries it is able prove it incurred, even though punitive damages are not recoverable from a governmental entity. Harm is not irreparable "if it is fully compensable by money damages." <u>Overstreet v. Lexington-Fayette Urban Co. Gov't</u>, 305 F.3d 566, 573 (6th Cir. 2002). If the Plaintiff is able to prove Lake City wrongfully infringed on Plaintiff's trademark, which Lake City is not conceding Plaintiffs can, then the trier of fact will determine an

14

appropriate damages award for the harm Plaintiff incurred. As Plaintiff will not suffer irreparable harm, Defendants urge the Court not to grant Plaintiff's request for injunctive relief.

Additionally, as set out in Section B.1 *supra*, any damages Plaintiff may incur are speculative at this point, because it is far from certain that the name change will actually occur. The proposed name change is still awaiting final approval from the Tennessee General Assembly, and even if the General Assembly approves the name change, the city council for Lake City must approve the change by a majority vote. At this stage of the litigation, any damages Plaintiff may incur are speculative at best. Thus, this factor also weighs against the grant of an injunction.

### 3. Issuance of an injunction may cause harm to others

As set out in Plaintiff's Complaint, Lake City is pursuing the name change based on a proposal from the Developers to build a theme park in Lake City. (Doc. 1: Compl., ¶ 51). The theme park is essential to development within the City, because of "Lake City's relative lack of industry, manufacturing, tourism, or any other employment base or economic driver." (Doc. 1: Compl, ¶ 49). Enjoining Lake City from changing its name will quash the proposed development, which will in turn prevent Lake City from receiving the boost in tourism and job growth that the development would generate. This would harm each and every resident of Lake City.

### 4. The public interest will not be served by granting injunctive relief

There is a public interest in "preventing confusion and deception in the market place and protecting the trademark holder's property interest in the mark." Innovation Ventures, LLC v. N2G Distributing, Inc., 2008 WL 1735371 (E.D.Mich.) However, it is evident that Lake City has no intention of utilizing any of Plaintiff's trademarked goods in the market place. The Plaintiff's trademarked products are set out in Paragraph 20 of its Complaint include: decorative magnets, license plates, lapel pins, bumper stickers and decals, drinking glasses, banners, golf caps, t-shirts, etc. There are no allegations in the Complaint that Lake City intends to introduce any of

Plaintiff's trademarked "Rocky Top," products into the market place. Thus, there is little likelihood of confusion or deception in the market place between a city named Rocky Top and Plaintiff's trademarked products.

Additionally, any confusion in the market place will be minimal given the number of businesses in this state that also use the name "Rocky Top." As set out in the attached listing provided by the Tennessee Secretary of State, there are at least 264 registered entities in Tennessee that also use the name "Rocky Top." (Business Information Search from Tennessee Secretary of State website, attached hereto as Exh. 2). Given the market saturation that already exists for businesses and entities referred to in some way as "Rocky Top," it is extremely unlikely that the addition of one more "Rocky Top" entity can be said to cause consumer deception and/or confusion. Thus, the public interest will not be served by the grant of a preliminary injunction.

## CONCLUSION

It is therefore requested that Plaintiff's Motion for a Preliminary Injunction be dismissed on its face or alternatively denied for the reasons set for above.

RESPECTFULLY submitted this 9th day of April, 2014.

                                        CITY OF LAKE CITY, TENNESSEE

                                        By:    /s/Emily A. Cleveland, BPR No. 027157
                                                     EMILY A. CLEVELAND, BPR NO. 027157
                                                       NATHAN D. ROWELL, BPR NO. 017545
                                                       Attorneys for Defendant
                                                       WATSON, ROACH, BATSON,
                                                       ROWELL & LAUDERBACK, P.L.C.
                                                       Attorneys at Law
                                                       P.O. Box 131
                                                       Knoxville, Tennessee  37901-0131
                                                       (865) 637-1700

## **CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system:

| | |
|---|---|
| John F. Triggs<br>Ryan D. Levy<br>WADDEY & PATTERSON, PC<br>Roundabout Plaza, Suite 500<br>1600 Division Street<br>Nashville, TN 37203 | Tim Isbel<br>150 Luke Leinart Lane<br>Lake City, TN 37769-5824 |
| Brad Coriell<br>491 Sadler Way<br>Franklin, TN 37069-4320 | Mark Smith<br>129 Hobert Lane<br>Winfield, TN 37892 |
| Michael Lovely<br>621 Wallace Avenue<br>Lake City, TN 37769 | Carl "Buddy" Warren<br>790 North Cedar Bluff Rd.<br>Apt. 1101<br>Knoxville, TN 37923-2246 |
| Carl "Buddy" Warren<br>9303 Barrington Blvd.<br>Knoxville, TN 37922 | |

       Dated this 9th day of April, 2014.

       /s/Emily A. Cleveland, BPR No. 027157
       EMILY A. CLEVELAND, BPR NO. 027157
       Attorney for Defendant
       WATSON, ROACH, BATSON,
       ROWELL & LAUDERBACK, P.L.C.
       Attorneys at Law
       P.O. Box 131
       Knoxville, Tennessee 37901-0131
       (865) 637-1700