UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HOUSE OF BRYANT PUBLICATIONS, LLC, )
)
               Plaintiff, )
)
v. )      No.: 3:14-CV-93-TAV-HBG
)
CITY OF LAKE CITY, TENNESSEE, *et al.*, )
)
               Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>

This civil action is before the Court on plaintiff's Motion for Preliminary Injunction [Doc. 3]. Plaintiff House of Bryant Publications, LLC ("House of Bryant") moves the Court to enjoin defendant City of Lake City, Tennessee ("Lake City") from changing its name to "Rocky Top," enjoining all defendants from pursuing or supporting efforts pertaining to the city's name change to "Rocky Top," and prohibiting development of plans for an amusement park or other development trading on the name "Rocky Top" until such time that the Court may determine the rights of the parties and whether Lake City should be permanently enjoined from changing its name to "Rocky Top."

Lake City filed a response to the motion for injunctive relief [Doc. 19], as did defendants Rocky Top Tennessee Marketing and Manufacturing Co. ("Rocky Top Marketing"), Tim Isbel, Mark Smith, Michael Lovely, and Brad Coriell (collectively, the "developer defendants") [Doc. 23]. Plaintiff filed replies [Docs. 25, 26], both of which

included a document identified as the "DEPOSITION OF CARL 'BUDDY' WARREN" [Docs. 25-1, 26-2]. All defendants, including Carl Warren, who did not file a response to the motion for injunctive relief, filed motions to strike plaintiffs' reply briefs due to the inclusion of the document identified as the "DEPOSITION OF CARL 'BUDDY' WARREN" [Docs. 29, 32, 33], and plaintiff filed a response to the earliest filed of those motions [Doc. 30].

The Court held a hearing on the motion for preliminary injunction on May 5, 2014, during which it also heard argument concerning the motions to strike [Doc. 34]. As the Court announced during that hearing, it took the motions under advisement for further consideration. After much consideration of the filings, the arguments advanced orally by the parties, and the law, the Court hereby denies plaintiff's request for injunctive relief and denies the motions to strike as moot.

## I. Background

On March 10, 2014, plaintiff commenced this suit for declaratory judgment establishing likelihood of confusion and/or trademark infringement, false designation or false description, unfair competition, passing off, false advertising, declaratory judgment establishing likelihood of dilution, dilution, willful and/or exceptional conduct, unlawful taking, deceptive trade practices, common law trademark infringement, Tennessee dilution and injury to business reputation, civil conspiracy, and other claims not yet discovered arising from allegedly infringing activities undertaken by the named defendants, as well as other unknown defendants not yet named [Doc. 1].

2

Plaintiff owns the copyright registration to the song "Rocky Top" (the "Copyrighted Song") and has licensed the song to many artists and organizations, including the University of Tennessee and Dolly Parton, among others [Doc. 3-1 pp. 1–2]. It is also one of the state songs of Tennessee [*Id.* at 2]. In October 2013, plaintiff registered the federal trademark for the phrase "Rocky Top" for nine different categories of goods and services (the "Marks"), including, for example, metal license plates, decorative magnets, lapel pins, bumper stickers, drinking glasses, and items of clothing [*See* Doc. 3-4]. Plaintiff asserts that Rocky Top is a "world famous phrase that popularly conjures notions of the Copyrighted Song owned by [plaintiff] and of the goods and services protected by the Marks" [Doc. 3-1 p. 2]. It further asserts that due to the licensing agreements with the University of Tennessee and its status as a state song, along with other artists' use of the Copyrighted Song, the Copyrighted Song "invokes ideas of the state of Tennessee and the University of Tennessee and other entities with which House of Bryant shares beneficial relationships" [*Id.*]. Plaintiff claims "Rocky Top" is a "highly distinctive mark and is popular in Tennessee, the American South, and throughout the world" [*Id.*]. It further claims that the licensing agreement with the University of Tennessee lends the Marks to nationwide popularity and recognition, independent of the Copyrighted Song [*Id.*].

Lake City is approximately 26 miles from Knoxville, Tennessee, and the University of Tennessee. In November 2013, Lake City's city council voted to change the city's name to "Rocky Top" due to "the influence of members of the board of

3

directors of [Rocky Top Marketing], who promised lavish development, investment, and construction if the city were to rename itself" [*Id.* at 3]. Those developments include spending an estimated $147.425 million to construct, in four phases, a 3-D interactive theater, a train ride, a laser-tag arena, a 1,500-seat theater, a Rocky Top Sweets & Candies Emporium, various merchandising (clothing, toys, books, etc.), a river-pirate themed restaurant, a water park, a train depot, a loading dock and shopping center, a functioning train called the Rocky Top Express that will travel to the University of Tennessee during football season, a hotel and banquet hall, a Rocky Top sports arena, an office and administrative building, and an amusement park [*Id.*].

The name change was presented to the Tennessee General Assembly and Senate, and both approved [*See* Doc. 19]. At the hearing, the parties informed the Court that the governor has signed the bill authorizing the name change, thus leaving only a city council vote to effectuate the name change [*Id.*].

Plaintiff asserts that one of the people supporting the name change is Tim Isbel, the Anderson County official representing Lake City, who also is a principal of Rocky Top Marketing [Doc. 3-1 p. 4]. He has been quoted as saying "[s]uccess comes in a name—the name of Rocky Top" [*Id.*]. Brad Coriell is another principal of Rocky Top Marketing and has asserted that part of the reason the city should change its name is because "[t]he magic of that name is going to bring [tourists] in" [*Id.*]. And in a meeting with plaintiff, during which plaintiff encouraged defendants to proceed with the

4

development plans, albeit with a different name, defendants "admitted that no other name would work for the purposes of Lake City and the Developers" [*Id.* at 4–5].

Because plaintiff believes defendants are infringing upon the Marks, plaintiff moves the Court to enjoin Lake City from changing its name [Doc. 3]. While plaintiff recognized at the hearing that an injunction against only Lake City would serve its interests, it also seeks to enjoin the other defendants from continuing efforts in support of the name change and to enjoin the development of plans for an amusement park or other development trading on the name "Rocky Top" [*Id.*].

## II.    Analysis

Rule 65 of the Federal Rules of Civil Procedure permits a party to seek injunctive relief if he believes he will suffer irreparable harm or injury during the pendency of the action. Fed. R. Civ. P. 65. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).

In determining whether to grant a plaintiff's request for injunctive relief, the Court must consider four factors: (1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (citation omitted). The factors are to be balanced and are "not prerequisites that must be

5

met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation and internal quotation marks omitted). A stronger showing of likelihood of success on the merits is required if the other factors militate against granting relief, but a lesser showing of likelihood of success on the merits is required when the other factors support granting relief. *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1385–86 (6th Cir. 1995) (citations omitted).

## A.  Strong Likelihood of Success on the Merits

Plaintiff moves for an injunction on the merits of what it categorizes as its "trademark causes of action"—which include declaratory judgment establishing likelihood of trademark infringement, trademark infringement, false designation, unfair competition, passing off, and false advertising [Doc. 3-1 p. 9 n.2]—submitting that the same analysis of "likelihood of confusion" applies to all of these causes of action [*Id.* p. 9 n.3]. Alternatively, plaintiff moves on the merits of its dilution claim [Doc. 3-1 p. 20]. Before turning to the merits of these claims, however, the Court must address the justiciability of the dispute.

The Court pauses, though, to address plaintiff's argument that its claims against Lake City and the developer defendants should be analyzed collectively, seemingly asserting a "trademark conspiracy." It submits that Lake City is acting on the basis of a proposal from the developer defendants, admitting that the developer defendants' proposal is essential to the economic growth of the city. While the Court has little doubt that the city would not be changing its name without the developers' proposal, and that

6

the developers would not be pursuing their plans without the city changing its name, absent authority from the plaintiff supporting a collective analysis, the Court declines to analyze the claims against the defendants collectively given the general rule that the liability of each defendant or group of defendants must be analyzed separately. *See Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008); *see also Ahmed v. Holder*, No. 1:13-CV-00271, 2013 WL 4544436, at *3 (N.D. Ohio Aug. 27, 2013) (analyzing each group of defendants separately in the context of an APA claim). Hence, the Court examines the likelihood of success of the trademark causes of action and the dilution claim, as well as the justiciability of those claims, first with respect to Lake City, and then the developer defendants.

### 1. Standing and Ripeness

Both Lake City and the developer defendants argue that plaintiff lacks standing and that its claims are not ripe for review.

Article III standing is a threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). It "enforces the Constitution's case-or-controversy requirement." *Warth*, 422 U.S. at 498. "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citation omitted).

To establish Article III standing, a plaintiff must demonstrate:

> (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

7

hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wuliger*, 567 F.3d at 793 (quoting *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004)). The inquiry "'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" *Valley Forge Christian College v. Americans United for Separation of Church & States, Inc.*, 454 U.S. 464, 484 (1982) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)).[1]

"A second doctrine that 'cluster[s] about Article III' is ripeness." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997) (alteration in original) (quoting *Vander Jagt v. O'Neill*, 699 F.3d 1166, 1178–79 (D.C. Cir. 1982) (Bork, J., concurring)). "The [ripeness] doctrine is designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Insomnia Inc. v. City of Memphis, Tenn.*, 278 F. App'x 609, 612 (6th Cir. 2008) (citations and internal quotation marks omitted). More specifically:

> In determining whether a claim is ripe for review, courts consider three factors: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.

*Id.* (citations, alterations, and internal quotation marks omitted). "Ripeness requires that the injury in fact be certainly impending" and "separates those matters that are premature

---

[1] Given the parties' arguments, the Court limits its analysis to Article III standing and does not address prudential standing.

because the injury is speculative and may never occur from those that are appropriate for the court's review." *Magaw*, 132 F.3d at 280 (citations and internal quotation marks omitted). In other words, "[r]ipeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Id.* at 284.

Notably, "[t]here is unquestionably some overlap between ripeness and standing[,]" and "[w]hen the injury alleged is not actual but merely threatened, standing and ripeness become more difficult to distinguish." *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003). Therefore:

> Although standing and ripeness are considered separate issues, in practice they involve overlapping inquiries. If no injury has occurred, the plaintiff could be denied standing or the case could be dismissed as not ripe. The question whether an alleged injury is sufficient to meet the constitutional "case or controversy" requirement is at the heart of both doctrines.

*Kardules v. City of Columbus*, 95 F.3d 1335, 1343 (6th Cir. 1996).

### a. Lake City

Lake City submits that plaintiff has not sustained an injury as a result of the city's attempt to change its name to "Rocky Top" because the formal approval process for the name change is not complete. Moreover, Lake City contends that even if its name is changed, such a change would increase the visibility and recognition of plaintiff's Marks, thereby increasing, rather than injuring, the Marks' value. Lake City thus argues that plaintiff has not shown that it has suffered a concrete injury-in-fact and therefore lacks standing.

9

Plaintiff responds that, as the owner of the Marks, it has standing because the value of the Marks will be reduced if Lake City changes its name to "Rocky Top." Plaintiff further argues that the name change is imminent absent Court intervention because the state legislature and governor have approved the change, and thus, Lake City will be free to change its name once its city council—which voted in favor of the name change in November 2013—approves the change. Thus, plaintiff submits that it is in immediate danger of injury. As for Lake City's argument that the name change will increase the value of the Marks, plaintiff emphasizes that trademarks protect reputation and allow their owners to determine their reputation and fate.

Regarding plaintiff's Article III standing as to Lake City, while Lake City's assertion that plaintiff has yet to sustain an injury may be true, this argument ignores that standing may be established by demonstrating that plaintiff will suffer an imminent, as opposed to conjectural or hypothetical, injury. Given that the approval of Lake City's city council—which appears very likely given its November 2013 vote—is all that remains before Lake City can enact the proposed change, and plaintiff's argument that the name change will injure its interest in the Marks, the Court finds that plaintiff's alleged injury is likely imminent, satisfying the first factor for Article III standing. Moreover, the injury that will allegedly result from the name change is fairly traceable to the challenged action of Lake City—its proposed name change—and it is likely that this injury would be redressed by a favorable decision because such a decision would prevent Lake City from changing its name. Therefore, the Court finds that plaintiff likely has

Article III standing to bring its trademark infringement and dilution claims against Lake City.

On the issue of ripeness, Lake City acknowledges Sixth Circuit precedent that a claim is ripe when it is "highly probable" that the alleged injury will occur, *Casden v. Burns*, 306 F. App'x 966, 972 (6th Cir. 2009), but argues that the probability of the name change is "far from evident here" because approval is subject to the discretion of Lake City's city council [Doc. 19 p. 8]. Further, Lake City contends that plaintiff has not shown that hardship will result from allowing the name-change process to proceed and thus generate debate within the city council, suggesting that if the name change occurs and ultimately causes harm to plaintiff, the issue will be ripe and can be addressed at that time.

In response, plaintiff submits that none of the factors for consideration in the ripeness inquiry militate in Lake City's favor. To this end, the alleged harm is almost certain to occur, the factual record is sufficiently developed to produce a fair adjudication of the merits of plaintiff's claims, and if judicial relief is denied at this stage, then the harm to plaintiff will be substantial, while the harm to Lake City will be minimal. Plaintiff notes that the ripeness doctrine aims to prevent court intervention in "abstract disagreements," which it argues this is not, considering (1) the recent approval by the Tennessee legislature and the governor, (2) the fact that Lake City's city council voted in favor of the name change in November 2013, and (3) the overlap between the members of the city council and the individuals involved with the proposed development. In the

11

event relief is denied at this stage, plaintiff submits that the hardship will be "insurmountable" [Doc. 25 p. 7].

Concerning the first ripeness factor, as Lake City points out, courts "pay particular attention to the likelihood that the harm alleged by plaintiffs will ever come to pass." *United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988). Here, though Lake City's proposed name change is, at least formally, not a certainty, as plaintiff notes, because (1) the city council previously voted in favor of the change, (2) Lake City's city council contains individuals involved in the development of this project, and (3) the proposed development will presumably generate tourism and revenue for the city, the council will almost certainly vote to effectuate the change if plaintiff's motion for a preliminary injunction is denied. Thus, it is highly probable that Lake City's city council will approve the name change, at which point Lake City would be free to change its name. This is one of the primary harms alleged by plaintiff, and given the substantial likelihood that it will occur, the first factor weighs in favor of ripeness.

As for the second factor, the factual record appears sufficiently developed on the issue of Lake City's proposed name change. More specifically, the issue is whether the name change will infringe upon the rights afforded to plaintiff by its Marks, and the parties have fully briefed and argued this issue.

Finally, concerning the hardship the parties will suffer if judicial relief is denied at this stage, plaintiff convincingly argues that the hardship it would suffer in terms of any

possible trademark infringement or dilution occurring as a result of Lake City's name change outweighs Lake City's interest in allowing its city council to debate and vote on the issue.

In sum, the Court finds that plaintiff's trademark infringement and dilution claims against Lake City are likely ripe for review.

### b.      Developer Defendants

The developer defendants contend that plaintiff lacks Article III standing and that its claims are not ripe for review, submitting that there is no case or controversy present because: (1) the proposed development is merely that, a proposal, which is to be completed over a period of years, if at all; and (2) plaintiff cannot point to a single item in the proposal that would infringe upon its Marks.  As noted, the standing and ripeness inquiries overlap when the alleged injury is threatened, rather than actual, because "[t]he question whether an alleged injury is sufficient to meet the constitutional 'case or controversy' requirement is at the heart of both doctrines."  *Kardules*, 95 F.3d at 1343.

Plaintiff argues that the alleged harm is almost certain to occur, the factual record is sufficiently developed to produce a fair adjudication of the merits of plaintiff's claims, and plaintiff will face severe hardship if the Court declines to grant relief at this stage. As a result of what plaintiff characterized at the hearing as the chief harm that would result from Lake City's name change—that is, the ability of third parties to utilize the "fair use" defense—plaintiff's arguments mirror its arguments concerning its standing to bring its trademark infringement and dilution claims against Lake City, and why those

claims are ripe for review. To this end, plaintiff submits that if Lake City changes its name to "Rocky Top," this phrase will become geographically descriptive in nature, allowing for a fair use defense based upon the argument that use of the phrase merely identifies, geographically, the origin of the goods or services in which the phrase is used. In other words, plaintiff contends, Lake City's name change will open the floodgates to defendants or third parties producing goods and services featuring the phrase "Rocky Top" with impunity.

Plaintiff's fair-use-defense argument is based upon the following statutory language:

> conclusive evidence of the right to use the registered mark shall be subject to proof of infringement . . . and shall be subject to the following defenses or defects[,] . . . [t]hat the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, *or their geographic origin*.

15 U.S.C. § 1115(b)(4) (emphasis added). "Under the fair use doctrine, the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (citations and internal quotation marks omitted) (emphasis in original). "Fair use permits others to use a protected mark to describe aspects of their own goods, provided the use is in good faith and not as a mark." *Id.* (quoting *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995)) (alteration omitted). "Such

14

description of geographical origin must, however, be made in a purely descriptive and non-trademark sense." *Schafer Co. v. Innco Mgmt. Corp.*, 797 F. Supp. 477, 481 (E.D.N.C. 1992), *aff'd*, 995 F.2d 1064 (4th Cir. 1993).

Regarding whether plaintiff has standing to bring its claims against the developer defendants, the first question is whether the alleged injury-in-fact resulting from the conduct of the developer defendants is concrete and particularized, as well as actual or imminent. Plaintiff makes two arguments as to why the Court should answer this question in the affirmative: (1) if Lake City is permitted to change its name, the developer defendants will go forward with plans to develop various attractions, goods, and services featuring the phrase "Rocky Top," which will infringe upon plaintiff's Marks; and (2) if Lake City is permitted to change its name, the developer defendants and third parties will be free to produce "Rocky Top" goods and services with impunity based on the "fair use" defense.

The developer defendants reply that plaintiff has failed to produce evidence of such plans on their part, submitting that their development plans are unrelated to plaintiff's Marks, and the Court finds plaintiff has not put forth evidence that the developer defendants are likely to produce infringing products [*See* Doc. 3-7]. As for the timetable for this development, it is unknown to what extent, if at all, the developer defendants have secured the millions of dollars in funding required for their purported plans. Therefore, though we know that "[c]orn won't grow at all on Rocky Top," it is yet to be determined whether an ambitious, wide-ranging development will [Doc. 43-1 p 9].

Given that the content of, and timetable for, the developer defendants' plans is unclear, any injury to plaintiff's Marks resulting from the conduct of the developer defendants is appropriately described as conjectural or hypothetical, not actual or imminent. Moreover, given that the nature of any such infringement is equally conjectural, plaintiff has not suffered a concrete or particularized injury at the hands of the developer defendants, nor can the Court say that such an injury is imminent.

Even assuming plaintiff is correct and the developer defendants intend to sell goods or services featuring the phrase "Rocky Top," whether plaintiff suffers a legal injury from such conduct will depend upon whether the description of geographical origin is made in good faith and in a purely descriptive, non-trademark sense. *Hensley Mfg.*, 579 F.3d at 612. Therefore, whether plaintiff would suffer injury from such usage is conjectural at this point and cannot be determined on the present record.

Moreover, the fact that plaintiff emphasizes that third parties could use this "fair use" defense against plaintiff's attempted enforcement of its trademark rights indicates that plaintiff's alleged injury may not be fairly traceable to the actions of the developer defendants. Thus, the second factor required for standing militates against plaintiff, as well.

Consequently, the Court does not find that a strong likelihood exists that plaintiff has Article III standing as to the developer defendants at this time.

Given the overlapping nature of the standing and ripeness inquiries under the circumstances, much of the foregoing analysis regarding plaintiff's standing as to the

16

developer defendants is applicable on the issue of ripeness. In light of the present uncertainty as to the developer defendants' plans and their representations that they do not plan to market products that infringe on plaintiff's Marks, as well as the uncertainty as to whether unknown forms of post-name-change usage would constitute "fair use," the Court does not find it likely that plaintiff faces a "certainly impending" injury. *Magaw*, 132 F.3d at 280. Instead, the question of whether the developer defendants will cause injury to plaintiff's trademark-protected interests is more appropriately described as "speculative." *Id.* Therefore, the first factor on the issue of ripeness weighs against plaintiff.

Additionally, given that the nature and timetable of the developer defendants' plans, along with the likelihood that they come to fruition, is uncertain, the factual record is insufficiently developed to produce a fair adjudication of the merits of plaintiff's claims at this time. Because "any ultimate trademark dispute will turn in large measure on the actual, precise appearance of the allegedly infringing label[,] . . . [u]ntil an entity actually uses, imitates, or copies Plaintiff's mark, Plaintiff cannot advance a cause of action based on its trademark rights." *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*, 193 F. Supp. 2d 6, 25 (D.D.C. 2001). But, as an illustration of where the ripeness line is drawn, where "[the defendant] awaits only a favorable judicial decision before proceeding with its clearly identified merchandising efforts[,] . . . the issue [i]s ripe for determination." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir. 1996).

17

Here, the factual record is insufficiently developed in terms of the allegedly infringing conduct planned by the developer defendants. It cannot be said on the current record that the developer defendants have "clearly identified merchandising efforts" prepared for implementation. *Id.* In fact, not only would any inquiry as to whether the developer defendants' alleged plans or future conduct will infringe upon or dilute plaintiff's Marks be entirely hypothetical, the present factual record does not allow the Court to determine whether the developer defendants could properly invoke the "fair use" defense with which plaintiff is concerned. Thus, the Court finds that the second factor also indicates that plaintiff's claims against the developer defendants are not ripe for review.

Finally, regarding any hardship the parties will suffer if judicial relief is denied at this stage of the proceedings, the Court finds that neither party will suffer significant hardship and that the benefits of declining to rule upon plaintiff's claims against the developer defendants at this time vastly outweigh any resulting hardship to the parties. To this end, the conduct of the developer defendants—considered separately from Lake City's conduct—is not imminently likely to injure plaintiff if the Court declines to grant relief today. And if, in the future, the conduct of the developer defendants causes, or is imminently likely to cause, injury or hardship to plaintiff, then plaintiff can seek appropriate relief. At that point, the factual record will be more developed on the issues of trademark infringement and dilution, as well as any asserted defenses, such as "fair use," which will allow the Court to render a ruling based upon facts and not speculation.

18

Succinctly, plaintiff's claims against the developer defendants are not likely ripe for review because they are "anchored in future events that may not occur as anticipated, or at all." *Id.* at 284. Therefore, the Court does not find that a strong likelihood exists that plaintiff's claims against the developer defendants are ripe for review.

### 2. Trademark Causes of Action and Dilution Claim Against Lake City: "Use In Commerce"[2]

While plaintiff urges the Court to issue a preliminary injunction because the likelihood of confusion should be presumed given the defendants' indications of the intent behind renaming the city, this argument cannot be considered until examining whether Lake City is commercially using "Rocky Top." *See Calabrese, Racek & Markos, Inc. v. Racek*, No. 5:12-cv-02891-SL, 2013 WL 3893978, at *3 (N.D. Ohio July 26, 2013) (noting that "a prerequisite to liability under § 1125(a)(1)(A) [is that] defendants must 'use in commerce' the protected trade name"). Lake City argues that it is not using "Rocky Top" in commerce; in other words, it is not using "Rocky Top" in connection with the sale, offering for sale, distribution, or advertising of any goods or services, and it asserts that it does not plan on doing so.

Plaintiff has urged that commercial use is broader than merely use by a business or person, and that Lake City is trading on plaintiff's Marks by supporting the developer defendants' plans in the hope that the plans will spur growth and increase tax revenue for

---

[2] Because the Court finds that it is not likely that plaintiff has standing to bring its trademark causes of action and dilution claim against the developer defendants, and because the Court finds it not likely that those claims are ripe for adjudication, the Court does not address the merits of the claims with respect to the developer defendants.

Lake City. In addition, plaintiff submits that Lake City (1) has admitted that it is changing its name at the behest, and for the benefit, of a private corporation, and (2) would not have gone to the effort of working with the governor and several political entities if it was not going to derive a substantial benefit from the name change.

"The Trademark Act of 1946 ("Lanham Act") prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (citing 15 U.S.C. §§ 1114, 1125(a)). Specifically, 15 U.S.C. § 1114 provides that any person who "*use[s] in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" can be held liable for infringement. 15 U.S.C. § 1114(1)(a) (emphasis added).

Congress later provided a remedy for dilution of a famous mark by enacting the Federal Trademark Dilution Act ("FTDA"). Specifically, "the owner of a famous mark" may obtain "an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name *in commerce* . . . ." 15 U.S.C. § 1125(c)(1) (emphasis added).[3] As with infringement claims, dilution claims are "subject to a commercial use requirement." *Kremer*, 403 F.3d at 676. The commercial

---

[3] "Dilution law, unlike traditional trademark infringement law . . . is not based on a likelihood of confusion standard, but only exists to protect the quasi-property rights a holder has in maintaining the integrity and distinctiveness of his mark." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 801 (6th Cir. 2004) (quoting *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003)).

use requirement of the FTDA is "virtually synonymous with the 'in connection with the sale, offering for sale, distribution, or advertising of goods and services' requirement" of the Lanham Act. *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 517 (E.D. Va. 2003).

Hence, for both the trademark causes of action and the dilution claim, the Court must initially examine whether Lake City is engaged in commerce. The focus is on the "use in connection with the sale of goods clause." *Kremer*, 403 F.3d at 677 (stating that "the district court should have determined . . . whether [the defendant's] use was "in connection with a sale of goods or services" rather than a "use in commerce"); *see also Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."). Use of a trademark not "'in connection with the sale . . . or advertising of any goods or services,' . . . is outside the jurisdiction of the Lanham Act . . . ." and correspondingly the FTDA. *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) (first alteration in original). *But see Browne v. McCain*, 612 F. Supp. 2d 1125, 1132 (C.D. Cal. 2009) (noting scope of "in commerce" is broad). Put another way, the issue here is whether Lake City's use of "Rocky Top" as the name of its city is "in connection with a sale of goods or services." *Kremer*, 403 F.3d at 677. If not, then Lake City's proposed use of "Rocky Top" is not "commercial" and not violative of the Lanham Act or the FTDA. *See id.* ("The question before us, then, boils down to whether [the defendant's] use of [the plaintiff's registered trademark] as his domain name was 'in

21

connection with a sale of goods or services.'  If it was not, then [the defendant's] use was 'noncommercial' and did not violate the Lanham Act.").

Plaintiff suggests that its Marks are typical of items one would find in a gift shop, but there is nothing in the record to support the notion that Lake City intends on selling any "Rocky Top" items.  Instead, the only information before the Court is that the city intends on renaming itself "Rocky Top."  There is no indication that the city will be operating a theme park involving the use of "Rocky Top," nor that it will sell any goods at any such theme park.  Indeed, plaintiff conceded this much at the hearing. The Court thus finds that it is unlikely that plaintiff's trademark causes of action and its dilution claim will succeed because it is unlikely that Lake City is using "Rocky Top" in commerce.

Yet, the parties have made it clear to the Court that this is a novel situation.  While the Court cannot say whether this is the first time in history that a city has changed its name and been accused of trademark infringement, there is, by everyone's account, little case law directly on point.  The Court has endeavored to examine this novel situation under existing case law, and under that case law, the Court further finds it is unlikely that Lake City is using "Rocky Top" in commerce.  Particularly, several federal courts have held that mere incorporation is not enough to satisfy the "use in commerce" requirement. *Racek*, 2013 WL 3893978, at *3–5 (finding that defendants' use of plaintiff's trade name in the incorporation of a new company, without more, was insufficient to establish the "use in commerce" requirement); *Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy*

*Sheriff's Ass'n of Stanislaus Cnty.*, No. CV F 09-1988 LJO SMS, 2010 WL 843131, at *7 (E.D. Cal. Mar. 10, 2010) (filing articles of incorporation with same name that had been used previously by plaintiff not a use in commerce); *Enea Embedded Tech., Inc. v. Eneas Corp.*, No. 08-CV-1595-PHX-GMS, 2009 WL 648891, at *4–7 (D. Ariz. Mar. 11, 2009) (finding defendants did not use plaintiffs' mark "on or in connection with any goods or services" where defendants registered business names and used plaintiffs' mark in correspondence with plaintiff by offering to consent to name change in exchange for exclusive use of registered names in Arizona and by demanding plaintiffs cease from using those names); *CNA Fin. Corp. v. Brown*, 922 F. Supp. 567 (M.D. Fla. 1996) (finding no "use in commerce" where defendant did not use plaintiff's name in connection with services); *Hertz Corp. v. Knickerbocker*, 206 F. Supp. 305 (S.D.N.Y. 1962) (finding no Lanham Act protection where defendant incorporated company that included mark of plaintiff and the articles of incorporation set forth business plans mirroring those of plaintiff). Congruently, other federal courts have held that the mere registration of an internet domain name is not commercial use. *See Kremer*, 403 F.3d at 676–80 (dissatisfied customer's use of mark as domain name for website critical of plaintiff not commercial use); *Bird v. Parson*s, 289 F.3d 865, 879 (6th Cir. 2002) (noting that "[c]ommercial use occurs where the alleged diluter uses 'the trademark as a trademark, capitalizing on its trademark status,' and finding that posting domain name on internet auction site insufficient to establish commercial use); *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 507 (D. Md. 1999) (collecting cases). Thus, while the city may very

23

well be changing its name to generate growth and tax revenue, it is not likely that Lake City is engaging in commerce by simply renaming itself "Rocky Top." Instead, "Rocky Top, Tennessee" would merely be "home sweet home" to the residents of the city currently known as "Lake City, Tennessee" [Doc. 43-1 p. 9].

Accordingly, for this reason, the Court finds that plaintiff's trademark causes of action and federal dilution claim against Lake City are not likely to succeed on the merits. That, however, does not end the inquiry, because in its reply, plaintiff raises the likelihood of success on the merits of its state-law dilution claim.

It is well settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues "deprives the non-moving party of its opportunity to address the new arguments." *Cooper v. Shelby Cnty.*, No. 07-2283-STA-cgc, 2010 WL 3211677, at *3 n. 14 (W.D. Tenn. Aug. 10, 2010) (collecting Sixth Circuit and district court cases discussing this principle); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (noting that a party waives an issue raised for the first time in a reply brief or motion for reconsideration). Further, the Local Rules of this District provide that "reply briefs are not necessary and are not required by Court. A reply brief shall . . . directly reply to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1(c). Accordingly, as a matter of litigation fairness and

procedure, and because the matter was not addressed at the hearing, the Court declines to address this argument at this time.[4]

To conclude, the Court finds that plaintiff has not demonstrated a strong likelihood of success on the merits of its trademark causes of action nor its federal dilution claim because (1) it is not likely that plaintiff has standing to bring these claims against the developer defendants nor that the claims against the developer defendants are ripe, and (2) Lake City is not likely using "Rocky Top" in commerce.

## B.     Irreparable Injury

Plaintiff argues that if Lake City is permitted to change its name, plaintiff will be irreparably injured because: (1) its Marks will be infringed upon and diluted; (2) it will lose the ability to exclude others from its Marks as a result of the "fair use" defense; and (3) its customers will be confused. Moreover, plaintiff submits the injury will be irreparable in the sense that its damages, such as those resulting from the impairment of the intangible value of plaintiff's Marks, will be difficult to prove.

Conversely, Lake City contends that there is no danger of irreparable harm because plaintiff is also seeking damages, which will be available to compensate plaintiff for any injury the Court determines plaintiff has suffered. To this end, the Sixth Circuit has stated that "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at

---

[4] Like the FTDA, under the Tennessee statute, a plaintiff may obtain "an injunction against another person's *commercial use* of a mark or trade name . . . ." Tenn. Code Ann. § 47-25-513. Federal courts "interchangeably analyze[] the Tennessee and federal antidilution statutes." *AutoZone*, 373 F.3d at 802. Thus, even if the Court were to consider the matter, it would find that the commercial use requirement is not met for purposes of the state-law claim.

578. Plaintiff responds that the alleged injures are, by law, irreparable, and that in demanding monetary damages, plaintiff is merely seeking all forms of relief for what will be a sweeping injury. The developer defendants succinctly argue that plaintiff has not shown that it will be irreparably harmed by their plans.

It is true that "courts generally seem to be somewhat more lenient in finding [irreparable] harm in trademark cases than in other areas of the law," *Versar, Inc. v. Vertac Chem. Corp.*, 573 F. Supp. 844, 846 (W.D. Tenn. 1983), and "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition," *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (citations and internal quotation marks omitted). Similarly, to the extent that plaintiff is likely to succeed on the merits of the federal dilution claim, "dilution is itself an injury which cannot be recompensed by money damages," *Deere & Co. v. MTD Prods., Inc.*, 860 F. Supp. 113, 122 (S.D.N.Y. 1994), and therefore "irreparable harm is generally presumed in cases of . . . dilution," *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).

On the other hand, if the plaintiff does not demonstrate a strong likelihood of success on the merits, the plaintiff is not entitled to a presumption of irreparable harm. *Fallat v. Cryomed, LLC*, No. 08-14875, 2009 WL 1514311, at *1 (E.D. Mich. May 29, 2009) (finding that "because Plaintiff did not establish a strong likelihood of success on the merits of his claims as they related to the CryoPac Units, he is not entitled to a presumption of irreparable harm"). So, the presence of irreparable harm is closely related

to the plaintiff's likelihood of success on the merits. And of course, if the plaintiff will not suffer harm as a result of the challenged conduct, then the possibility of irreparable harm is necessarily foreclosed. *Am. Civil Liberties Union of Ohio Found., Inc. v. Ashbrook*, No. 1:01-CV-0556, 2002 WL 1558823, at *2 (N.D. Ohio June 14, 2002).

More importantly, to justify the extraordinary relief that is a preliminary injunction, "the moving party must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 818 (E.D. Mich. 2013) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). As the Supreme Court explained: "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

In light of the Court's finding that plaintiff has not demonstrated a strong likelihood of success on the merits in its claims against Lake City, the Court finds that plaintiff will not suffer certain and immediate irreparable harm absent preliminary injunctive relief against Lake City. More specifically, because the Court finds it is not likely that Lake City would be engaging in commerce simply by renaming itself "Rocky Top," it is not likely that plaintiff will suffer harm under the Lanham Act or FTDA if its motion is denied. With infringement or dilution harm unlikely, the Court consequently

finds that plaintiff has not made a sufficient showing that it will be irreparably harmed unless the Court grants its motion as to Lake City.

Further, as previously noted, any harm to plaintiff resulting from the conduct of the developer defendants is, at this point, speculative or conjectural given that the developer defendants' plans are uncertain and in light of their representations to the Court that their plans will not infringe upon or dilute plaintiff's Marks. Given that the likelihood of plaintiff suffering any harm as a result of the developer defendants' conduct is speculative and uncertain, rather than certain and immediate, the Court finds that plaintiff has not made the requisite showing of irreparable harm absent injunctive relief against the developer defendants.

### C. Harm to Others

Plaintiff asserts that third parties will benefit, rather than suffer harm, in the event the Court issues the requested injunction. Specifically, the injunction will protect the interests of plaintiff's licensees, including the University of Tennessee. Failing to issue the injunction, it further asserts, could make it more difficult for plaintiff to enforce its intellectual property rights against other potential infringers and cause plaintiff's licensees, and other potential licensees, to question the necessity of their license arrangements.

Lake City counters that issuing the injunction will cause harm to Lake City and its residents because development of the theme park is essential to the viability of the city, which is in economic distress. Plaintiff claims that the injunction would not cause the

28

loss of any current jobs or activities currently being undertaken on behalf of the city's residents; it will merely suspend plans for the name change and future development.

Considering the parties' arguments, on balance, the Court finds this factor neither favors nor disfavors the requested injunction. Given the Court's analysis of the "fair use" defense, the Court is not convinced that denying the injunction would cause plaintiff's licensees harm. Yet, it finds that issuing an injunction would not cause much harm to the residents of Lake City because, if the lawsuit is unsuccessful, the injunction would merely delay the development plans.

### D.    Public Interest

Plaintiff argues that there are two public interests that might be served by granting the injunction. First is the public's interest in guarding the rights guaranteed by federal trademark protection. Plaintiff submits it has owned the copyright on the Copyrighted Song for decades and licensed that song to the University of Tennessee. The use of the Copyrighted Song by the University enabled plaintiff to register federal trademarks on the term "Rocky Top." Plaintiff asserts it has spent decades investing in its Copyrighted Song and Marks and following the rules required for federal registration.

Second is the public interest "from being misled as to the source or origin of the goods or services they are buying" because "[t]rademark infringement, by its nature, adversely affects the public interest in the 'free flow' of truthful commercial information," citing *Big Boy Restaurants v. Cadillac Coffee Co.*, 238 F. Supp. 2d 866, 873 (E.D. Mich. 2002), and *Gougeon Brothers, Inc. v. Hendricks*, 708 F. Supp. 811, 818

29

(E.D. Mich. 1988). Plaintiff argues that defendants have made no secret that they want to use "Rocky Top" because of the fame and goodwill associated with that name. Thus, it concludes, the injunction will prevent the public from being misled into thinking that the city is associated with the "Rocky Top" brand or the University of Tennessee.

Lake City admits that there is a public interest in preventing confusion and deception in the marketplace and protecting a trademark holder's property interest in the mark, but it argues it has no intention of utilizing any of plaintiff's trademarked goods in the marketplace. It also argues that there will be minimal confusion if it changes its name because of the many businesses in Tennessee that also use the name "Rocky Top."

The Court agrees that there is a public interest in protecting trademarks. *See Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 151 (D.D.C. 2011) (concluding that the plaintiff was entitled to a permanent injunction because the public interest favored "protecting against further violation of federal copyright and trademark laws"); *Country Inns & Suites by Carlson, Inc. v. Two HO. P'ship*, No. 01-cv-1214, 2001 WL 1587903, at *4 (D. Minn. Nov. 19, 2001) ("Federal trademark law is premised on the concept that protecting intellectual property and preventing consumer deception is in the public interest."). Yet, the Court's analysis regarding the likelihood of success of plaintiff's trademark claims suggests that an injunction is not needed to protect this public interest at this time. The Court also agrees that there is a public interest in preventing confusion and deception in the marketplace, but given the Court's finding that the claims against the developer defendants are not likely ripe and that the claims against

30

Lake City are not likely to succeed because Lake City is not likely using "Rocky Top" in commerce, an injunction need not issue at this stage of the proceedings to protect this public interest. This factor thus weighs against granting the requested injunction.

In sum, after balancing the factors that the Court must consider in examining a motion for injunctive relief, the Court finds that the factors do not militate toward granting such extraordinary relief. It will, therefore, deny plaintiff's motion.

## III.    Motion to Strike

Lake City and the developer defendants filed motions to strike plaintiff's replies to their responses to the motion for preliminary injunction, asserting that plaintiff: (1) took a party deposition without notification and (2) improperly references inadmissible settlement negotiations [Docs. 29, 33]. Defendant Carl Warren also filed a motion to strike, asserting that he had sustained a serious head injury in an automobile accident in September 2013 and that his memory is still affected [Doc. 32].

Given the Court's analysis of the motion for preliminary injunction set forth in this memorandum opinion and order, the Court finds that it need not rule on the motions to strike because neither the document entitled "DEPOSITION OF CARL 'BUDDY' WARREN" nor the reference to settlement discussions factored into the Court's analysis. To the extent the parties seek a ruling on whether the document entitled "DEPOSITION OF CARL 'BUDDY' WARREN" is actually a deposition or, as plaintiff contends, a witness statement, the Court is denying the motions as moot and without prejudice so that the parties have leave to address the issue at a later point in this litigation.

IV.    **Conclusion**

For the reasons explained herein, plaintiff's Motion for Preliminary Injunction [Doc. 3] is hereby **DENIED**, and Defendant City of Lake City's Motion to Strike Plaintiff's Reply to City of Lake City's Response to Motion for Preliminary Injunction [Doc. 29], Defendant Carl Warren's Motion to Strike Plaintiff's Reply to City of Lake City's Response to Motion for Preliminary Injunction [Doc. 32], and the developer defendants' Motion to Strike [Doc. 33] are hereby **DENIED as moot**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE