UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| HOUSE OF BRYANT PUBLICATIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:14-CV-93-TAV-HBG |
| | ) |
| CITY OF LAKE CITY, TENNESSEE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

On May 28, 2014, the Court denied plaintiff's motion for a preliminary injunction, which requested that the Court enjoin defendant City of Lake City, Tennessee ("Lake City") from changing its name to "Rocky Top," enjoin all defendants from pursuing or supporting efforts pertaining to the city's name change to "Rocky Top," and prohibit development of plans for an amusement park or other development trading on the name "Rocky Top" until such time that the Court may determine the rights of the parties and whether Lake City should be permanently enjoined from changing its name to "Rocky Top" [Doc. 45]. Subsequently, plaintiff filed a notice of appeal [Doc. 46] and then asked this Court to enjoin Lake City from changing its name to "Rocky Top" pending the decision of the United States Court of Appeals for the Sixth Circuit [Doc. 47]. The motion for an injunction was filed approximately twenty-four hours before Lake City was scheduled to vote on the name change [Doc. 48 p. 7; Doc. 49 p. 2]. The Court thus set the matter for a hearing, and Lake City filed a prompt response in opposition [Doc. 49].

After hearing the parties' arguments and considering their filings, the Court denied the motion. In doing so, the Court indicated that it would file a written opinion supporting its decision.

I.   **Analysis**

Plaintiff moved the Court to issue an injunction pursuant to Federal Rule of Civil Procedure 62(c).[1] Rule 62(c) provides that a "court may . . . grant an injunction" "[w]hile an appeal is pending from an interlocutory order or final judgment that . . . denies an injunction[.]" Fed. R. Civ. P. 62. In considering a request for such relief, a district court evaluates the same four factors evaluated in a request for a preliminary injunction. *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (noting also that under both Rule 62(c) of the Federal Rules of Civil Procedure and Rule 8(a) of the Federal Rules of Appellate Procedure, "the factors regulating the issuance of a stay are generally the same"). These factors are: (1) the likelihood the party seeking an injunction will prevail on the merits of the appeal; (2) the prospect of irreparable harm absent the injunction; (3) the prospect of harm to others if the court grants the injunction; and (4) the public interest in granting the injunction. *Id.*; *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal."). "All four factors are not

---

[1] Normally, "the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals." *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1991). An exception to the jurisdiction-transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure.

2

prerequisites but are interconnected considerations that must be balanced together." *Granholm*, 473 F.3d at 244. In addition, to justify an injunction at this procedural juncture, "a movant need not always establish a high probability of success on the merits." *Griepentrog*, 945 F.2d at 153. "[I]f a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.* at 153–54 (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

### A.   Likelihood of Prevailing on the Merits of the Appeal

Plaintiff argues that the Court is likely to be reversed on appeal because it erred in applying the "in commerce" standard applicable to Lanham Act claims to the claims brought under the Trademark Dilution Revision Act ("TDRA"), 15 U.S.C. § 1125(c) [Doc. 48]. In support of this argument, plaintiff makes three points. First, plaintiff argues that the plain language of the Lanham Act and the TDRA make clear that the provisions contain different standards because the Lanham Act imposes liability upon "any person who . . . on or in connection with any goods or services . . . uses in commerce" a mark that is "likely to cause confusion," 15 U.S.C. § 1125(a)(1), whereas the TDRA provides that "the owner of a famous mark" may obtain "an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce," 15 U.S.C. § 1125(c)(1). Second, citing legislative history, plaintiff argues that Congress deliberately removed the commercial use requirement from the dilution statute. Finally, plaintiff argues that the case law relied upon by the Court in its memorandum opinion and order denying the initial request for an

3

injunction interprets the Federal Trademark Dilution Act ("FTDA"), the precursor to the TDRA, and was therefore not applicable.

In response, Lake City argues that even assuming the Court incorrectly applied the statute, which Lake City does not concede, the error was harmless because plaintiff has failed to meet the threshold requirement of proving its trademarks are famous. More specifically, Lake City contends that "Rocky Top" has achieved only "niche fame," which, under case law interpreting the TDRA, is not enough to prevail on the merits.

The Court first turns to the text of its opinion denying the initial request for an injunction. While the Court referenced the FTDA in opening its discussion about the dilution claim [Doc. 45 p. 20] and in subsequent sentences as shorthand reference to plaintiff's § 1125(c)(1) claim, the Court expressly referenced the current language of the statute—that is, the language of the TDRA [*Id.*]. Thus, reference to the FTDA, alone, does not lead the Court to conclude that there are serious questions going to the merits of plaintiff's § 1125(c)(1) claim or that the Sixth Circuit will likely reverse this Court on appeal.

Along the same lines, plaintiff argues that the case law interpreting the FTDA, upon which the Court relied, was inapplicable to the Court's analysis. In examining plaintiff's § 1125(c)(1) claim, the Court relied upon, as instructive, *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005). The Ninth Circuit instructed that "as with infringement claims, dilution claims are 'subject to a commercial use requirement.'" 403 F.3d at 676 (citing, along with a prior Ninth Circuit decision, *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 517 (E.D. Va.

4

2003), for the proposition that the commercial use requirement of the FTDA is "virtually synonymous with the 'in connection with the sale, offering for sale, distribution, or advertising of goods and services' requirement" of the Lanham Act). While not cited in the Court's opinion, there is case law following the passage of the TDRA and interpreting the current version of the statute as imposing a "commercial use" requirement, just as in *Bosley*. *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 110–12 (2d Cir. 2010) ("There is no second mark or product at issue here to blur with or to tarnish 'Tiffany.' . . . [I]nsofar as eBay did not itself sell the goods at issue, it did not itself engage in dilution."); *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1268 (D. Colo. 2009) (citing the language of the TDRA and *Bosley*, finding that "'commercial use' of the mark is a requirement to state a claim for trademark dilution"); *see also Howard Johnson Int'l, Inc. v. Vraj Brig, LLC*, No. 08-1466, 2010 WL 215381, at *7 (D.N.J. Jan. 14, 2010) (noting that "[l]ike infringement claims, dilution claims require a showing that the defendant used the protected mark in offering or providing its own goods or services," although not referencing the TDRA).

Finally, relying upon legislative history, plaintiff argues that Congress intended to remove the commerciality requirement from the "prima facie case for dilution" [Doc. 48 p. 5].[2] Although the Court declines to engage in a full statutory interpretation analysis at this time given the procedural posture and limited briefing on the issue, the Court makes

---

[2] The Court notes the recognized sparseness of the legislative history. 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 24:101 (4th ed.) ("The 2006 TDRA must largely speak from the text of the statute itself. There is very little legislative history.").

5

a few observations. First, the current statute requires "use of a mark or trade name in commerce," 15 U.S.C. § 1125(c)(1), and the statutory definition of "use in commerce" is "the bona fide use of a mark in the ordinary course of trade . . . on goods . . . and . . . services," 15 U.S.C. § 1127. Second, the current statute exempts "noncommercial use" of a mark from liability. 15 U.S.C. § 1125(c)(3)(C). Finally, courts have acknowledged that the TDRA revised the FTDA in three substantial ways, none of which include the deletion of the commerciality requirement. *See, e.g.*, *Nike, Inc. v. Nikepal Int'l, Inc.*, No. 2:05-cv-1468-GEB-JFM, 2007 WL 2782030, at *5 n.5 (E.D. Cal. Sept. 18, 2007) (noting only three ways in which the TDRA revised the FTDA: it established that likelihood of dilution, not actual dilution, is required to establish a dilution claim; it set forth four factors regarding famousness; and it listed factors regarding likelihood of dilution).

Hence, all of this, in conjunction with the fact that plaintiff has not pointed the Court to any case law supporting plaintiff's interpretation of the TDRA, leads the Court to find that its reliance on case law pre-dating the TDRA does not raise serious questions going to the merits of plaintiff's § 1125(c) claim or that it is likely the Court of Appeals will reverse this Court on appeal.

In addition, even if the Court erred in its finding that Lake City is not using the "Rocky Top" mark in commerce, the Court finds the error was harmless. Plaintiff is also not likely to succeed on its dilution claim because the Court finds—on the record before it—that the "Rocky Top" mark is not likely famous.[3]

---

[3] The issue of "famousness" was raised in connection with plaintiff's initial motion for an injunction [*See* Docs. 23, 26], so the Court finds it appropriate to address here. It did not

A mark is "famous" if it "is widely recognized by the *general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). The term "'general consuming public'. . . presumably eliminates any possibility that niche fame—something viable prior to 2006—can justify a basis for finding a mark famous." *Quicken Loans, Inc. v. Nationwide Biweekly Admin., LLC*, No. 13-13431, 2014 WL 505576, at *5 (E.D. Mich. Feb. 7, 2014) (citation omitted); *see also Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012).

The bar for fame is high. *See TCIP Holding Co. v. Haar Commc'ns*, 244 F.3d 88, 100–01 (2d Cir. 2001) (noting that "Congress envisioned that marks would qualify as 'famous' only if they carried a substantial degree of fame," such as "Dupont" or "Buick" or "Kodak," which are "highly distinctive, arbitrary or fanciful marks"). In determining whether a mark is famous, the statute lists four factors to consider:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

---

consider this issue previously because of its finding regarding Lake City's use of the mark in commerce, another required component to succeeding on a dilution claim [*See* Doc. 45].

To achieve fame, the mark must be "so ubiquitous and well-known to stand toe-to-toe with Buick or KODAK." *Bd. of Regents, Univ. of Tex. Sys. v. KST Electric, Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (approving and accepting report and recommendation of magistrate judge). Put another way, only a "select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value" are considered famous. *Id.* at 674; *see also Avery Dinnison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) ("Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value."). Courts have determined that brands such as "Pepsi" and "Nike" are famous. *Nike*, 2007 WL 2782030, at *5–6; *Pepsico, Inc. v. #1 Wholesale, LLC*, No. 07-CV-367, 2007 WL 2142294, at *4 (N.D. Ga. July 20, 2007). As will be discussed below, however, the University of Texas's longhorn logo is not famous. 550 F. Supp. 2d at 673–79. Nor is Maker's Mark's red-wax seal. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 699–700 (W.D. Ky. 2010); *see also Am. Mensa, Ltd. v. Inpharmatica, Ltd.*, No. 07-3283, 2008 U.S. Dist. LEXIS 99394, at *31–42 (D. Md. Nov. 6, 2008) (finding that MENSA is not a famous mark).

The Court recognizes that "Rocky Top" is registered as a federal trademark for nine different categories of goods and services [*See* Doc. 1 ¶ 18]. This factor favors plaintiff, but registration alone does not demonstrate fame. *KST Electric*, 550 F. Supp. 2d at 576 (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

8

Competition, § 24:106 (4th ed.)). The Court must therefore consider the other factors set forth in § 1125(c)(2)(A).

Plaintiff argues that the "Rocky Top" mark is famous because the song "Rocky Top" has been protected by copyright since 1967 and recorded and replayed countless times by licensees, including the University of Tennessee, Buck Owens, The Osborne Brothers (who named their band "The Rocky Top Express"), Terry Gibb, Dinah Shore, Chet Atkins, Boots Randolph, Glen Campbell, and Dolly Parton, among others, and sold and distributed in interstate and foreign commerce. Plaintiff also notes that the copyrighted song "Rocky Top" is a state song of Tennessee. Further, plaintiff points out that plaintiff registered the federal trademark for the phrase "Rocky Top" for nine different categories of goods and services, and these goods and services are sold and distributed in interstate and foreign commerce as well. And it contends that its licensing relationship with the University of Tennessee and other entities invokes ideas of the state of Tennessee and the University of Tennessee. It relies upon the affidavit of L. Lee Wilson, General Counsel for plaintiff, in support of these assertions [Doc. 3-11].

Aside from this affidavit of plaintiff's general counsel—which includes several conclusory statements about fame—plaintiff offers no evidence of fame, and particularly, no evidence regarding the first three factors enumerated in § 1125(c)(2)(A). *See Quicken Loans*, 2014 WL 505576, at *6 (questioning, in ruling on a motion for preliminary injunction, "whether general consumers outside the State of Michigan 'widely recognize' Plaintiff's Mark" where the plaintiff offered only "self-proclaimed acclamations"). At best, plaintiff's assertions demonstrate "niche fame." In *Board of Regents, University of*

9

*Texas System v. KST Electric, Ltd.*, the court determined in ruling on a motion for summary judgment that the University of Texas ("UT") longhorn logo was not famous despite evidence that the UT football and basketball games are nationally televised on NBC and ESPN and the logo is prominently featured during the broadcasts; that over 35 million television viewers watched the Bowl Championship Series Rose Bowl game when UT beat the University of Southern California, which was at that time the highest-rated college football game since 1987; that from 1963–2006, UT football players had been featured on the cover of Sports Illustrated ten times; that a writer from the Sports Illustrated website named UT's football helmet as the number one non-letter helmet; that the same helmet was displayed on two boxes of Wheaties; that UT holds the record for most royalties earned in a single year and has been the number one university for licensing royalties for the past two years; that Forbes recently had valued UT's football program as the second most valuable in the country; and that retail sales of UT products in stores such as Wal-Mart and Target totaled nearly $400 million in 2005–06. 550 F. Supp. 2d at 677–78. *But see Univ. of Kan. v. Sinks*, 644 F. Supp. 2d 1287, 1306–08 (D. Kan. 2008) (finding sufficient evidence of fame to support jury verdict where the "plaintiffs submitted an abundance of evidence on the use of various marks both within and outside the context of sporting events"). Thus, even if plaintiff had similar proof related to the University of Tennessee's use of the mark "Rocky Top," the Court would find it difficult to conclude that the "Rocky Top" mark has achieved more than "niche fame." And, similarly, to the extent plaintiff argues the "Rocky Top" mark is famous because of the song bearing the same name, that fame would exist only among those to

whom the song has appeal—not the general consuming public [*Accord* Doc. 3-11 ¶ 18 (noting that the "Rocky Top" mark covering nine different categories of goods "is very recognizable among the consuming public *with whom the Marks and the Copyrighted Song have commercial appeal*." (emphasis added))].

Hence, given the high level of fame required to succeed on a dilution claim, the Court finds on the record before it that plaintiff is not likely to succeed on the merits of its dilution claim. Put another way, the Court has serious doubts at this time that "Rocky Top" can stand toe-to-toe with Buick or Kodak.[4]

In sum, the Court finds that, with respect to the dilution claim, plaintiff has not shown serious questions going to the merits or that it is likely the Court of Appeals will reverse this Court on appeal. This factor thus weighs against granting the requested injunction.

### B. Irreparable Injury

Plaintiff asserts that it will suffer irreparable harm absent an injunction because dilution is an injury that cannot be recompensed by money damages. The Court fully recognizes this proposition, *see Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 46, 469 (7th Cir. 2000) ("Irreparable harm is generally presumed in cases of trademark . . . dilution."), but because plaintiff has not shown serious questions going to the merits of

---

[4] The Court notes that it is not defendant's burden to prove the "Rocky Top" mark is not famous, as plaintiff seemed to suggest during the hearing; rather, it is plaintiff's burden to prove the mark is famous. *KST Electric*, 550 F. Supp. 2d at 677 (noting that plaintiff "bears the burden of proof on the famousness issue at trial"). And the Court is not determining whether plaintiff has a plausible cause of action for dilution; the Court is determining whether plaintiff is likely to succeed on the merits of the claim on the record before it.

11

the dilution claim, the Court finds that this factor weighs against granting the requested injunction. *See Fallat v. Cryomed, LLC*, No. 08-14875, 2009 WL 1514311, at *1 (E.D. Mich. May 29, 2009) (finding that "because Plaintiff did not establish a strong likelihood of success on the merits of his claims . . . , he is not entitled to a presumption of irreparable harm").

### C. Public Interest and Harm to Others

As the Court stated during the hearing on this matter, the Court finds its analysis regarding these factors in connection with the initial request for an injunction applicable here.[5]

## II. Conclusion

In sum, after balancing the factors that the Court must consider in examining a motion for injunctive relief at this procedural stage of the litigation, the Court finds that the factors do not militate toward granting such extraordinary relief. It therefore **DENIES** Plaintiff's Motion for Injunction Pending Appeal [Doc. 47].

s/ Thomas A. Varlan  
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The Court notes that the prejudice Lake City claims it would suffer because of the timing of plaintiff's instant motion has not factored into the Court's analysis.

12